**FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **JUUL LABS, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  1:18-cv-01516** |
| **THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,** | |
| **Defendants.** | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE*
MOTION FOR TEMPORARY ASSET RESTRAINT AND EXPEDITED DISCOVERY**

Plaintiff Juul Labs, Inc., ("Plaintiff" or "JLI"), by counsel, and pursuant to 15 U.S.C.

§ 1116 and Fed. R. Civ. P. 65, submits this Memorandum of Law in Support of its *Ex Parte*[1]

Motion for a Temporary Restraining Order, including a temporary asset restraint and expedited

discovery (the "Motion").

**I.      INTRODUCTION AND SUMMARY OF ACTION**

This action seeks to stop the sale of counterfeit JUUL-brand products, including to

minors. JLI's revolutionary product, JUUL, is the U.S. market leader in the Electronic Nicotine

Delivery System ("ENDS") category, capturing over 72% of market share.  Since its launch in

---

[1] Defendants are foreign, including particularly Chinese, individuals or companies with the means and the ability to transfer the assets contained in each of Defendant's respective PayPal or Alipay account outside of this Court's jurisdictional reach. If Defendants learn of this suit, it will create an incentive to transfer the assets. *Ex parte* filing is warranted in this case in the interest of justice.

2015, JLI's one-of-a-kind system has become the clear leader in the ENDS market, enjoying substantial brand cache and loyalty.  However, as is the case with many successful brands, JLI has become aware of significant counterfeiting problems in the United States and around the world, particularly as it relates to the replaceable pods containing nicotine infused liquids ("e-liquid") that are used in JLI's ENDS products.

JLI's nicotine e-liquid pods are subject to strict quality controls, comply with FDA premarket approval requirements as set forth in guidance, and are filled in JLI's contract facilities in the United States. The same is likely not true for the manufacturers of the counterfeit JLI pods at issue in this case (the "Counterfeit JLI Pods"). In fact, the identity and whereabouts of Defendants' manufacturers remains a mystery. More importantly, the quality and contents of the purported nicotine e-liquid in the Counterfeit JLI Pods is unknown and could be harmful to users. Equally concerning is Defendants' reckless disregard for age restrictions placed on tobacco products. Whereas JLI sells through retail outlets that require age verification, Defendants allow anyone, including those under the legal age, to purchase their counterfeit pods. This conduct is not only unlawful, but causes significant irreparable harm to JLI, which, as a result of this unlawful behavior, is regularly, falsely linked to selling its products to underage individuals. To prevent these potentially harmful, counterfeit e-liquid pods from getting into the hands of U.S. consumers, including underage users, immediate injunctive relief is requested and justified.

Defendants are knowingly and intentionally promoting, advertising, marketing, retailing, offering for sale, distributing, and selling counterfeit products bearing the famous and distinctive JLI Trademarks within this judicial district and throughout the United States. Specifically, Defendants do so through the use of online stores, such as those on eBay and AliExpress,

conducted with the user accounts listed in Schedule A to the Verified Complaint (the "Defendant Internet Stores"), and one or more accounts with the online payment services PayPal on eBay and Alipay on AliExpress. Through these unlawful actions, Defendants have deceived, and continue to deceive, consumers into believing that they are purchasing genuine JUULpods when, in fact, they are receiving unauthorized and unlicensed counterfeit products.

Defendants run sophisticated counterfeiting operations, and are doing business with Virginia residents by selling Counterfeit JLI Pods through online marketplaces, such as eBay. *See* Compl. ¶¶ 20-33. The Defendant Internet Stores share unique identifiers, such as design elements, trade channels, similarities in price, similarities in the description of the goods offered, and similarities of the counterfeit products offered for sale, establishing a logical relationship between them. *See* Compl. ¶¶ 22-23. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operations. *See id.* Defendants' ongoing unlawful activities should be stopped as soon as possible.

Defendants' unlawful activities have caused, and will continue to cause, irreparable injury to JLI by: (1) depriving JLI of the value and goodwill associated with its JLI Trademarks; (2) defrauding the public into thinking that the products offered by Defendants through, among other channels, the Defendant Internet Stores are genuine and authorized JUUL products when, in fact, they are counterfeit; and (3) depriving JLI of its right to control the manner in which their marks are presented to the public. Immediate injunctive relief is necessary to preserve the status quo and prevent Defendants from transferring all funds from U.S.-based accounts upon receiving notice of this action.

## II.   <u>STATEMENT OF FACTS</u>

JLI was founded in 2007 by James Monsees and Adam Bowen with the goal to design an innovative and viable alternative for smokers seeking an alternative to combustible cigarette smoking. JLI spent years and millions of dollars to develop its breakthrough electronic nicotine delivery system (branded "JUUL"), which launched in April 2015. JUUL is designed for and directed to existing adult smokers who seek a real alternative to traditional cigarettes.

JLI's proprietary system is comprised of two components: (1) a device; and (2) disposable pods ("JUULpods") prefilled with a proprietary mixture of vaporizer carriers, nicotine salt extract, and flavorings (together, "e-liquid"). When a user inserts a pod into the device and inhales from the mouthpiece of the system, the device rapidly heats the e-liquid in the pod aerosolizing it to allow the user to inhale a "puff" of the vaporized e-liquid. JUULpods are traditionally sold in packs of four. After all of the e-liquid in a given pod is depleted, the empty pod is discarded and replaced.

JLI incorporates its marks into the design of its devices, disposable pods, packaging, accessories, and merchandise. JLI also extensively uses it marks in connection with the selling it products, such as in store advertising, etc. *See* Compl. ¶¶ 15-17. These distinctive trademarks of the JUUL brand symbolize its marketability, reputation, and goodwill.

JLI owns numerous federally-registered trademarks, collectively referred to herein as "Plaintiff's Marks." *See* Compl. ¶ 17. True and Correct copies of Plaintiff's Marks are attached as Exhibit 1 to the Complaint.

Plaintiff's Marks have been used exclusively and continuously by JLI and have never been abandoned. *See* Compl. ¶ 16. The above U.S. registrations for Plaintiff's Marks are valid, subsisting, and in full force and effect. The registrations for Plaintiff's Marks constitute *prima*

*facie* evidence of their validity and of JLI's exclusive right to use Plaintiff's Marks in the U.S. pursuant to 15 U.S.C. § 1057(b).  *See id.*

The success of the JUUL brand has resulted in significant counterfeiting of its products. *See* Compl. ¶¶ 20-26. Not only does this counterfeiting cause irreparable injury to JLI, but it also poses serious health consequences to the general public, when they unknowingly purchase Counterfeit JLI Pods that are not subject to the same rigid quality, FDA oversight, and testing standards as genuine JUUL products. Moreover, counterfeit products appear to be sold without age verification, leading to minors illegally obtaining nicotine products. Consequently, JLI is forced to institute a worldwide anti-counterfeiting program that includes regularly investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id.* Despite JLI's enforcement efforts online and on the ground, Defendants have persisted in creating Internet auctions and other interactive websites that sell counterfeit JLI products that incorporate JLI's Trademarks, despite the fact that Defendants are unauthorized and unlicensed to do so.  *See* Compl. ¶¶ 20-33.

Once JLI learned of Defendants' online sales of what appeared to be genuine JUULpods, it strongly suspected such goods were counterfeit. Compl. ¶ 26. In July and August of 2018, JLI reviewed offerings from each Defendant Internet Store to determine their authenticity. Each of the Defendants offered to ship the counterfeit JLI products to this district. *Id.*

JLI has been unable to uncover the true identities of the individuals operating the Defendant Internet Stores despite diligent efforts. *See* Compl. ¶ 28. However, the facts outlined in JLI's well-pleaded allegations regarding Defendants' selling tactics, similarities among the Defendant Internet Stores and the Counterfeit JLI Pods for sale thereon, and common tactics employed to evade enforcement efforts, all establish a logical relationship among Defendants

5

and demonstrates that Defendants are an interrelated group of counterfeiters. Compl. ¶¶ 22-23, 28. In the event that Defendants provide additional credible information regarding their identities, JLI will take appropriate steps to amend the Complaint.

### III.   THE COURT SHOULD FREEZE ACCOUNTS USED IN CONNECTION WITH DEFENDANTS' COUNTERFEITING ACTIVITIES

Under Rule 65(b) of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order without written or oral notice to a defendant where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Here, each of the Defendants fraudulently promotes, advertises, offers to sell, and sells counterfeit goods bearing the famous and distinctive Plaintiff's Marks through use of the Defendant Internet Stores, and one or more PayPal or Alipay accounts. The entry of a temporary restraining order is appropriate because it would immediately enjoin Defendants from benefiting from their wrongful use of Plaintiff's Marks and preserve the status quo until such time as a hearing can be held. *See In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (recognizing that *ex parte* temporary restraining orders are "indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief"); *Microsoft Corp. v. John Does 1-27*, No. l0-cv-00156-LMB-JFA [Dkt. No. 23] (E.D. Va. Feb. 22, 2010) (granting an *ex parte* TRO upon finding that the "Court's ability to grant effective final relief will result from the sale, transfer, or other disposition or concealment by Defendants of the domains at issue…if the Defendants receive advance notice of this action."); *Dell Inc. v. BelgiumDomains, LLC*, No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief particularly compelling where counterfeiting activity "is in electronic form and subject to quick, easy, untraceable destruction by Defendants").

In the absence of an *ex parte* temporary restraining order, Defendants will have not only a strong incentive, but the opportunity to move any assets away from U.S.-based financial institutions, including PayPal or Alipay, to accounts outside the jurisdiction of this and other U.S. courts. Federal courts have recognized that, in circumstances such as these, providing notice to defendants "appears to serve only to render fruitless further prosecution of the action." *See In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *Time Warner Enter. Co. v. Doe*, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers"). To prevent Defendants from circumventing any relief this Court may provide, the Court should grant Plaintiff's *ex parte* motion for a temporary restraining order. Such relief has regularly been granted by this Court, as well as from other U.S. district courts around the country. *See, e.g.*, *See Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-00970 (E.D. Va. Aug. 29, 2017) (granting TRO directing PayPal to freeze all funds involving defendants' accounts); *Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-001413 (E.D. Va. Dec. 12, 2017) (same); *Montblanc-Simplo GmbH v. The Internet Domain Names identified on Schedule A*, 17-cv-00415-lmb-tcb [ECF No. 15] (E.D. Va. April 14, 2017) (granting motion for ex part asset seizure order); *Otter Prods., LLC et al v. The P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, 17-cv-010141 [ECF No. 23] (N.D. Ill. Feb. 14, 2017) (same); *Chloe SAS et al. v. Sawabeh Information Servs. Co.*, 11cv04147 [ECF No. 32] (C.D. Cal. May 17, 2011) (same); *Richemont Int'l SA et al. v. replicawatchesman.com*, 16-cv-62612 [ECF No. 16] (S.D. Fla. Nov. 28, 2016) (same).

### A.     <u>Standard for Temporary Restraining Order</u>

"The standard for granting either a TRO or a preliminary injunction is the same." *Velasquez v. Velasquez*, No. 1:14CV1688 JCC/TRJ, 2014 WL 7272934, at *3 (E.D. Va. Dec. 15, 2014) (citing *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006)). In deciding whether to grant a TRO or preliminary injunction, the Fourth Circuit follows the test established by the United States Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, whereby the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter,* 555 U.S. 7, 20 (2008)).

Applying the *Winter* factors to this case compels grant of JLI's motion and: (1) an order temporarily freezing all PayPal and Alipay accounts linked to Defendants and therefore likely to be used in connection with Defendants' counterfeiting; and (2) an order authorizing limited, expedited discovery allowing JLI to identify each of the Defendants and inspect their financial account(s).

JLI is likely to succeed on the merits as it has established facts supporting its claims that: (a) Defendants have used Plaintiff's Marks, without authorization, in connection with the sale, offering for sale, distribution, or advertising of counterfeit goods or services in a manner likely to cause confusion, or to cause mistake, or to deceive; (b) Defendants use Plaintiff's Marks, without authorization, in a manner that has caused and is likely to continue to cause confusion, mistake, and/or deception among consumers and the public; and (c) Plaintiff's Marks are famous and distinctive, and after the Marks became famous, Defendants used the Marks in commerce in a manner that is likely to cause dilution of the distinctive quality of the Marks.

If the *ex parte* Motion is not granted, Plaintiff will suffer irreparable harm. The Fourth Circuit has recognized that "irreparable injury regularly follows from trademark infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995); *Toolchex, Inc. v. Trainor*, 634F. Supp. 2d 586, 592 (E.D. Va. 2008) (granting a preliminary injunction based on the likelihood infringement will continue); *see also Vuitton v. White*, 945 F.2d 569, 576 (3d Cir. 1991) (recognizing "'immediate and irreparable injury' will not ordinarily be a difficult showing in a counterfeit case" and reversing the district court's denial of a seizure order). Here, it is a virtual certainty that if any of the Defendants learn about this action before the requested relief is granted, Defendants will expeditiously transfer all funds from their PayPal or Alipay accounts, thereby disrupting the status quo and denying Plaintiff of a means to collect upon any judgment it is likely to obtain. Moreover, none of the Defendants will suffer any cognizable harm if the Court grants Plaintiff's motion. As this Court has recognized, the ability of an infringer to reap the profits of prior infringement should not be considered when balancing the hardships. *See Toolchex, Inc.*, 634 F. Supp. 2d at 593.

The public interest also weighs heavily in favor of the Court granting a temporary restraining order. Through their actions, Defendants have deceived and continue to deceive consumers into believing that they are purchasing genuine JUUL products when, in fact, they are receiving unauthorized and unlicensed knockoffs, which is creating confusion among consumers, and even potential health consequences. The public will benefit from deterring such activity and preserving the availability of judicial remedies.

**B.**      **Plaintiff Will Likely Succeed on the Merits**

Plaintiff is likely to succeed on the merits of its claims for trademark counterfeiting and infringement, trademark dilution, and false designation of origin.

**1.**      **Trademark Counterfeiting**

9

A party is liable for trademark counterfeiting where: (1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offer for sale, or distribution of goods; and (4) the use of the counterfeit mark was likely to confuse consumers. 15 U.S.C. § 1114(1); *Match.Com, LLC. v. Fiesta Catering Int'l Inc.*, No. 1:12cv363, 2013 WL 428056, at *6 (E.D. Va. Jan. 31, 2013). The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." 15 U.S.C. § 1127 (2012); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007). A counterfeit mark does not have to be an exact replica, for that "would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (internal quotations and citation omitted).

Defendants have intentionally used Plaintiff's Marks in commerce without authorization or license. Defendants have created the Defendant Internet Stores, which display Plaintiff's Marks, and promote and sell Counterfeit JLI Pods. Compl. ¶ 1. JLI reviewed offerings from the Defendant Internet Stores and, through investigation into Defendants, learned of the PayPal and Alipay accounts being used by Defendants to sell counterfeit JLI products. *Id*. Defendants have almost certainly shipped counterfeit products to customers, including customers in this district. *Id*. Exhibit 3. JLI examined the offered products, and confirmed the counterfeit nature of such products. *Id*. ¶ 27. The foregoing acts establish Defendants' unauthorized use of Plaintiff's Marks in commerce.

There are at least two factors suggesting that Defendants know they are selling counterfeit products. First, in order to evade detection or potential action by Plaintiff, Defendants

regularly falsely describe their products. *See, e.g., id.* ¶ 19. Second, Defendants marketed the goods bearing counterfeit versions of Plaintiff's Marks at very low prices when they would have known that genuine JUUL products sell for a premium price. *Id.* ¶ 21; s*ee also United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) (observing that where goods were priced below wholesale, the defendant should have known they were counterfeit); *Coach, Inc. v. Gata Corp.*, No. 10-CV-141-LM, 2011 WL 2358671, at *8 (D.N.H. June 9, 2011) ("[A] reasonable person could have easily identified the counterfeit goods offered for sale at the Flea Market based on their dramatically low prices"). These facts support the conclusion that Defendants know the products are counterfeit.

Finally, Defendants' sale of the counterfeit products bearing Plaintiff's Marks is likely to confuse consumers. There is no doubt the goods sold by Defendants are counterfeit. And where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See* 15 U.S.C. § 1117(b)-(c) (2012); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). Moreover, Defendants' goods bear Plaintiff's Marks and the Defendant Internet Stores state that they fit JUUL devices. *See* Compl. Exhibit 2. Notably, the Counterfeit JLI Pods are packaged in a near-identical fashion as genuine JUUL Products, intentionally seeking to confuse and mislead consumers into thinking the counterfeit products are genuine. *See* Compl., ¶¶ 26-27.

For the foregoing reasons, Plaintiff is likely to prevail on its claims for trademark counterfeiting.

### 2.    Trademark Infringement

Similarly, Plaintiff is likely to prevail on its claim for trademark infringement. A party is liable for trademark infringement where: (1) the plaintiff has a valid and protectable trademark; and (2) the defendant's use of an imitation of that trademark is likely to confuse consumers. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). To show that a mark is

valid and protectable, a party must provide evidence that: (1) the mark has been used in such a manner that its nature and function are readily apparent and recognizable without extended analysis or research; (2) the party registered and owns the mark; and (3) the party is exclusively entitled to use the mark in commerce. 15 U.S.C. § 1114(1); *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593-94 (E.D.Va. 2008). Plaintiff's Marks are famous and distinctive throughout the United States and the world, and many of Plaintiff's Marks are registered around the world, including on the Principal Trademark Register of the U.S. Patent and Trademark Office. *See* Compl. ¶ 18. Thus, all that remains is to determine whether Defendants' use of an imitation of Plaintiff's Marks is likely to confuse consumers, which it is.

Where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See* 15 U.S.C. § 1117(b)-(c) (2012); *Polo Fashions,* 816 F.2d at 148. And, as discussed above, Defendants used, and continue to use, the Defendant Internet Stores to promote and sell counterfeit JLI products. Defendants complete these sales by shipping counterfeit JLI products. *See* Compl. Exhibit 3. These actions are sufficient to create a presumption of consumer confusion and a likelihood that JLI will succeed on its claim for trademark infringement.

### 3.    Trademark Dilution

Finally, JLI is also likely to prevail on its claim for trademark dilution. To prevail on its dilution claim, JLI must show that (1) its marks are famous, (2) its marks are distinctive, (3) Defendants used the marks in commerce, (4) Defendants' use began after the marks became famous, and (5) Defendants' use is likely to cause dilution of the distinctive quality of the mark. *See* 15 U.S.C. § 1125(c)(1). Plaintiff's Marks are exemplars of the famous marks that Congress had in mind when it expanded federal trademark protection to encompass protection from dilution. For example, JLI maintains over 72% of the worldwide ENDS market. Given this commanding market share, there can be no dispute that Plaintiff's Marks are the prototypical

famous trademarks that are entitled to protection under the Federal Anti-Dilution Act. *See, e.g.*, *Michael Caruso & Co., Inc., v. Estefan Enters.*, Inc., 994 F. Supp. 1454, 1463 (S.D. Fla. 1998), *aff'd* 166 F.3d 353 (11th Cir. 1998). Additionally, Defendants clearly made commercial use of Plaintiff's Marks after they became famous.

The final element is established as a matter of law when identical marks are used on similar goods. In that circumstance, dilution—the capacity of the famous marks to identify and distinguish the goods of the trademark holder—indisputably occurs. *See, e.g., Moseley v. V. Secret Catalogue*, 537 U.S. 418, 434 (2003) ("[D]irect evidence of dilution…will not be necessary if actual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior marks are identical."). Courts have routinely applied the *Mosley* presumption in granting injunctive relief. *See Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006); *Ford v. Heritage Mgmt.*, 911 F. Supp. 2d 616, 629-630 (E.D. Tenn. 2012). More importantly, here, there is actual evidence of dilution. Because of Defendants' unscrupulous selling of counterfeit nicotine products without any age restrictions, JLI has been subject to negative press stories claiming that JLI sells its products to an underage segment, which is patently false and tarnishes JLI's reputation.

### 4.      False Designation of Origin

Finally, JLI is also likely to prevail on its claim for false designation of origin. As with trademark infringement and counterfeiting claims, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 780, (1992). Whether the violation is called infringement, unfair competition, or false designation of origin, the test is identical—is there a "likelihood of confusion?" *Id.; see also Lone Star*, 43 F.3d at 930 ("In order to prevail under §§ 32(1) and 43(a)

of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers."). Therefore, because JLI has established the merits of its trademark counterfeiting and infringement claims against Defendants, including that consumers are likely to be confused, a likelihood of success is also shown as to JLI's claims for federal false designation of origin.

### C.   <u>Without *Ex Parte* Relief Plaintiff Will Suffer Irreparable Harm</u>.

JLI is likely to suffer irreparable harm if an order freezing the assets in Defendants' accounts is not granted. Although the personal identities of Defendants are unknown, they have the incentive and capacity to hide their assets upon learning that they are at risk, especially if Defendants do not reside in this country. Defendants have used multiple eBay user IDs to conduct their illegal counterfeiting operation, demonstrating their ability to evade the law. *See* Compl. ¶¶ 30-31. If Defendants learn of this action before their assets are frozen, they almost certainly will seek to transfer their assets from any accounts in the United States, depriving JLI of the ability to obtain an accounting or to otherwise obtain relief under 15 U.S.C. § 1117.

This Court, as well as other courts, has found that an asset freeze is justified under similar circumstances due to the likelihood that a counterfeiter will dissipate funds in accounts that are subject to the jurisdiction of U.S. courts and thereby deprive the plaintiff of an adequate remedy. *See, e.g., Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-00970 (E.D. Va. Aug. 29, 2017) (granting an asset freeze for Defendants PayPal accounts under similar facts); *Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-001413 (E.D. Va. Dec. 12, 2017) (same); *See, e.g., Diane Von Furstenberg Studio v. Snyder*, No. 1:06-CV-1356, 2007 WL 2688184, at *1 (E.D. Va. Sept. 10, 2007) (discussing sealed order restraining transfer of assets); *Dama S.P.A. v. Does*, No. 15-CV-4528, 2015 WL 10846737, at *2 (S.D.N.Y. June 15, 2015)

(recognizing that "Plaintiff's concerns regarding the likelihood of dissipating assets merit the extraordinary remedy of *ex parte* relief"); *Magpul Indus. Corp. v. John Doe 1-10*, No. 14-cv-1556 [Dkt. No. 22] (N.D. Cal. Apr. 15, 2014) (Order Granting Asset Freeze) ("[I]t is likely that Defendants will attempt to disperse their assets from PayPal to accounts beyond the jurisdiction of the United States, if they were to receive notice that those assets were at risk in this litigation."); *Warner Bros. Entm't Inc. v. Doe*, No. 14-CV-3492, 2014 WL 12543818, at *4 (S.D.N.Y. May 29, 2014) (discussing entry of asset restraint under seal). For these same reasons, Plaintiff will suffer irreparable harm if Defendants' accounts are not frozen.

**D.** **The Balance of Equities Tips Overwhelmingly in Favor of Maintaining the Status Quo By Freezing Defendants' Assets.**

On information and belief, Defendants are an inter-related group of counterfeiters who have profited through the sale of Counterfeit JLI Pods that infringe upon Plaintiff's Marks. Compl. ¶¶ 22-23. It is a virtual certainty that if any of Defendants learn about this action before the requested relief is granted, all of Defendants will expeditiously transfer all funds from their PayPal or Alipay accounts, thereby disrupting the status quo and denying Plaintiff of a means to collect upon any judgment they are likely to receive.

**E.** **The Public Interest Weighs Heavily in Favor of Granting Preliminary Injunctive Relief.**

The two aims of trademark law are to "protect the public from deceit" and to protect "investment from its misappropriation by pirates and cheats." *Two Pesos,* 505 U.S. at 782 n.l5 (citing S. Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946)); *see also AMP Inc. v. Foy*, 540 F.2d 1181, 1185-86 (4th Cir. 1976) (stating the purpose of a trademark is to protect the public from confusion about "the identity of the enterprise from which goods and services are obtained"). Thus, the public interest is served when the courts "prevent[] [both] consumers from being

confused" and "trademarks from being used deceptively…" *Toolchex, Inc.*, 634 F. Supp. 2d at 594.

Where a registered trademark is infringed, the Lanham Act provides that the trademark holder shall be entitled to recover: (1) the defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. The Fourth Circuit has recognized a "public interest in making the infringing misconduct unprofitable." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 176 (4th Cir. 2006). It follows that an order preserving the status quo and ensuring that Defendants cannot shelter their improperly obtained profits from the reach of U.S. courts is in the public interest.

Moreover, given that the counterfeit products here are consumed by humans, the public interest is critically important and weighs overwhelmingly in JLI's favor. Defendants' egregious counterfeiting poses potentially serious health consequences for the public and requires immediate judicial intervention. The counterfeit nicotine pods sold by Defendants contain e-liquid that is vaporized and inhaled by humans when using the electronic nicotine delivery system. Whereas the JUUL brand products are subject to strict quality control standards and the ingredients have been disclosed to the FDA (as part of JLI's ongoing required FDA submissions under relevant regulations), the public has no way of knowing who is making the counterfeit products, with what ingredients, and with what (if any) quality control and health safety measures. Compounding this concern is the fact that the manufacturer or source of the counterfeit products remains a mystery. The quality, safety, and integrity of these counterfeit nicotine pods is unknown and could be harmful to users. This case thus not only concerns harm to JLI's brand, business, and reputation, but also implicates a tremendous risk to the many consumers who are mistakenly buying and using the counterfeit products under the false

16

impression that it is a legitimate JUUL system product. To prevent potentially harmful consequences to the public, immediate injunctive relief is requested and justified

## IV.  **JLI IS ENTITLED TO LIMITED EXPEDITED DISCOVERY**

The Court should permit JLI to conduct expedited third-party discovery regarding each of Defendants' identities and the location and value of each of Defendants' financial accounts. Courts have "broad discretion" to supervise discovery. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). This latitude includes the ability to permit discovery to commence prior to a Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) (allowing a party to conduct discovery without a Rule 26(f) conference if ordered by the court).

Under Rule 65(d)(2), this Court has the authority to bind not only each of Defendants, but "those persons in active concert or participation with" them. *See* Fed. R. Civ. P. 65(d)(2). The relief provided under Rule 65(d)(2) extends to financial institutions conducting business with a defendant. *See Volvo Car Corp. et al. v. Unincorporated Ass'n, et al.*, Case No. 18-cv-00977 (E.D. Va. Aug. 31, 2018) (granting TRO directing PayPal and Alipay to freeze all funds involving defendants' accounts); *Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-00970 (E.D. Va. Aug. 29, 2017) (granting TRO directing PayPal to freeze all funds involving defendants' accounts); *Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-001413 (E.D. Va. Dec. 12, 2017) (same); *Montblanc-Simplo GmbH v. The Internet Domain Names identified on Schedule A*, 17-cv-00415-lmb-tcb [ECF No. 15] (E.D. Va. April 14, 2017) (granting TRO directing PayPal to freeze all funds involving defendants' accounts); *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 1:10-CV-1011, 2011 WL 2559806, at *2 (E.D. Va. June 27, 2011) (extending preliminary injunction preventing withdrawal or disposition of funds held in defendant's bank accounts); *Bottega Teneta SA v. 2013bagsale.com*, No. 13-cv-62456 (Dkt. No. 7) (S.D. Fla. Nov. 15, 2013) (granting TRO directing PayPal to freeze all funds

involving defendants' accounts); *SEC v. Temme*, No. 4:11-CV-655, 2011 WL 13143509, at *2 (E.D. Tex. Oct. 14, 2011) (enjoining "any bank, trust company, broker-dealer, depository institution, entity, or individual holding accounts or assets for or on behalf of any of the [d]efendants" from disbursing the defendants' assets). The third-party payment processor PayPal has cooperated with identical requests from many other consumer companies in previous similar cases.

This Court has regularly permitted expedited discovery in the interest of justice in order to allow Plaintiff to identify John Doe defendants under Federal Rule of Civil Procedure 26(d)(1). *See See Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-00970 (E.D. Va. Aug. 29, 2017) (granting expedited discovery in a case with similar facts); *Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-001413 (E.D. Va. Dec. 12, 2017) (same); *Montblanc-Simplo GmbH*, 17-cv-00415 [ECF No. 15]; *Cell Film Holdings, LLC v. Does*, No. 3:16-CV-749, 2016 WL7494319, at *5 (E.D. Va. Dec. 30, 2016); *LHF Prods., Inc. v. Does*, No. 3:16-CV-748, 2016 WL 7422657, at *5 (E.D. Va. Dec. 22, 2016).

The Fourth Circuit has not articulated a specific standard for analyzing motions requesting early discovery, but courts in this circuit and around the country have applied a "reasonableness" test that asks whether the plaintiff has shown good cause for expedited discovery. *See, e.g., Chryso, Inc. v. Innovative Concrete Solutions of the Carolinas, LLC*, No. 5:15-CV-115, 2015 WL 12600175, at *3 (E.D.N.C. June 30, 2015) ("apply[ing] the reasonableness-based test when a party seeks to conduct discovery prior to the Rule 26(f) conference in order to prepare for a preliminary injunction hearing"); *Humphrey v. Sallie Mae, Inc.*, No. 3:10-CV-01505, 2010 WL 2522743, at *1 (D.S.C. June 17, 2010) ("When presented with a motion to commence discovery prior to the Rule 26(f) conference, courts generally apply

18

a reasonableness or good-cause standard, taking into account the totality of the circumstances in which the motion is presented.").

Courts routinely find good cause to grant expedited discovery to enable Plaintiff to identify John Doe defendants in trademark and copyright infringement cases. *See e.g., See Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-00970 (E.D. Va. Aug. 29, 2017) (granting expedited discovery in a case with similar facts); *Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-001413 (E.D. Va. Dec. 12, 2017) (same); *Cell Film*, 2016 WL 7494319, at *5 (permitting plaintiff to subpoena ISPs before 26(f) conference to obtain Doe defendants' identifying information); *LHF Prods.*, 2016 WL 7422657, at *5 (same); *Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11-CV-345, 2011 WL 2634166, at *2 (E.D. Va. July 1, 2011) (same); *Assef v. Does 1-10*, No. 15-CV-01960, 2015 WL 3430241, at *3 (N.D. Cal. May 28, 2015) (granting expedited discovery of Doe defendants' contact information and IP addresses). Such expedited discovery is necessary to permit Plaintiff to identify the proper defendant(s), protect their rights, and obtain relief. *See Hard Drive Prods.*, 2011 WL 2634166, at *2. Accordingly, Plaintiff requests that the Court grant it permission to conduct limited expedited third-party discovery directed to eBay, PayPal, and Alipay for the purpose of seeking to identify Defendants and the scope of each Defendants' activities giving rise to this action.

## V.     **CONCLUSION**

For the foregoing reasons, JLI requests that this Court issue a temporary restraining order freezing the assets of each of the Defendants' PayPal and/or Alipay accounts, permit expedited discovery to determine each of the Defendants' identities and the amount and location of the profits of each of the Defendants counterfeiting and infringement and the scope of Defendants' activities, and grant such further relief as this Court deems proper.

Date:  December 6, 2018                         Respectfully submitted,

                                                /s/ Monica Riva Talley
                                                Monica Riva Talley (VSB No. 41840)
                                                Dennies Varughese, Pharm.D. (*pro hac pending*)
                                                Nirav N. Desai (VSB. No. 72887)
                                                Nicholas J. Nowak (*pro hac pending*)
                                                Daniel S. Block (*pro hac pending*)
                                                STERNE KESSLER GOLDSTEIN & FOX, PLLC
                                                1100 New York Ave., N.W., Suite 600
                                                Washington, DC 20005-3934
                                                Telephone No.: (202) 371-2600
                                                Facsimile No.: (202) 371-2540
                                                mtalley@sternekessler.com
                                                dvarughe@sternekessler.com
                                                ndesai@sternekessler.com
                                                nnowak@sternekessler.com
                                                dblock@sternekessler.com

                                                *Attorneys for Plaintiff*