**FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **JUUL LABS, INC.,**<br><br>    Plaintiff,<br><br>v.<br><br>**THE UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A,**<br><br>    Defendants. | Civil Action No. 1:18-cv-01516 |

**DECLARATION OF DANIEL S. BLOCK IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER AUTHORIZING SERVICE OF
PROCESS BY EMAIL**

I, Daniel S. Block, of the City of Washington, in the District of Columbia, declare as follows:

1. I am an attorney at law, duly admitted to practice in the District of Columbia. I have *pro hac vice* motion pending in this case I am one of the attorneys for Plaintiff Juul Labs, Inc., ("Plaintiff" or "JLI"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. Defendants listed in Schedule A to the Verified Complaint ("Complaint") establish numerous online stores on eBay and AliExpress to sell counterfeit Juul products without licenses from the trademark owner. These counterfeit products are of vastly inferior quality than the genuine ones, and are sold in vast quantities and shipped from China.

1

**FILED UNDER SEAL**

3. Plaintiff is undertaking a global trademark enforcement effort to reduce or stop the flow of counterfeit Juul products into the marketplace. Plaintiff seeks to protect its brand from infringement, dilution, tarnishment, and to generally protect the reputation which Plaintiff has established over the course of many years.

4. Plaintiff purchased goods from each of Defendants listed in Schedule A to the Complaint and conducted a thorough analysis of the goods. Plaintiff determined that the goods were, in fact, counterfeit and inferior to genuine JUUL products.

5. Many similarities exist between the various Defendant online stores that lead Plaintiff to believe Defendants are related in some manner. For example, the stores employ similar layouts, descriptions, images, and other identifying information. Defendants also have similar store layouts and use similar images of the counterfeit products. *See* Exhibits 2, 3.

6. Defendants also provide misleading contact information. For example, many of the email addresses used by Defendants to register their various PayPal and/or Alipay accounts contain randomly typed letters or numbers, and fail to provide information consistent with the shipping addresses on the packages Plaintiffs received as part of their test buys.

7. This is consistent with my experience in anti-counterfeiting. I have been counsel on numerous prior anti-counterfeiting actions with similar facts to this present Action. Consistently, I have found that defendants in such cases almost universally attempt to conceal their physical location.

8. Typically, in anti-counterfeiting cases such as the present one, Plaintiffs seek a temporary restraining order and early discovery from online payment services, such as PayPal. In such cases, I personally reviewed the information received from PayPal and compared it against the information received from test purchases of counterfeit goods made from the defendants in

those cases. In doing so, I have noticed some unique characteristics and patterns. For example, the zip codes provided by the counterfeiters to payment providers such as PayPal are often different than those supplied in the return address for the packages. And, based on my experience, I have no reason to believe Defendants in this Action are any different. As detailed further below, in cases like the current one, I have learned that defendants typically operate entirely online, and may not even have a physical business location, instead relying on shipping services and post office boxes.

9. Through my work on anti-counterfeiting cases, I have conferred with PayPal and I am aware that PayPal requires a working email address to conduct business on its site. I understand that Alipay also requires a working email address to conduct business. Through my discussions with PayPal, I learned about the process PayPal undertakes once it is informed of a litigation. First, PayPal freezes the PayPal account associated with the accused email. PayPal institutes an automatic hold on the PayPal account, preventing the owner from transferring money from the account. PayPal then emails the accountholder and informs him or her that the account is frozen. I understand that Alipay uses a similar process.

10. More often than not, once PayPal or Alipay has informed the account holder that their account has been frozen, the accountholder contacts counsel for Plaintiffs directly via email. Those defendants are often able to reach amicable settlements that call for the release of the PayPal or Alipay accounts once the defendant has met certain preconditions. Although defendants typically provide PayPal/Alipay and Plaintiffs with inconsistent mailing address information, the PayPal/Alipay email address is always accurately linked to the infringing online account.

11. Based on my previous cases, I would estimate that roughly 80% of all defendants contact Plaintiff's counsel for settlement. Notably, the defendants that contact Plaintiffs by email do so in English. In my experience, the defendants are generally able to communicate and effectively negotiate settlements in English and without translation to Chinese. And the defendants usually admit to selling the infringing goods.

12. We have also attempted to determine the location of the Defendants by conducting test buys of their goods. But we have been unable to reliably do so, which in my experience is due at least in part to the Defendants' purposeful concealment of their identity and location.

13. This is consistent with information I have learned in other cases. For example, in *Volkswagen AG et al. v. Unincorporated Ass'n, et al.*, Case No. 17-cv-001413 (E.D. Va. Dec. 12, 2017), Plaintiffs learned that a Defendant had four separate eBay stores registered to a single payment account. When the test purchases were received from this defendant, none of the four packages originated from the address supplied by PayPal—and each of the packages provided four distinct return addresses and four unique names on the packages despite originating from the same business.

14. In another example from the same case, a defendant contacted Plaintiffs after receiving notice from PayPal that the account associated with their email was frozen. The defendant claimed to be a young single mother who did not run a successful business. However, PayPal records indicated that defendant had received over $3,000,000 in transactions. The parties, after confronting the defendant with this information, were able to reach a settlement with defendant.

**FILED UNDER SEAL**

15. In another case, *Volkswagen AG et al. v. Unincorporated Ass'ns, et al.*, Case No. 17-cv-00970 (E.D. Va. Aug. 29, 2017), defendants used similar tactics to conceal their identities including using post office boxes for the return address on the shipped goods or supplying vacant lots as their home address.

16. In one instance in that case, the Volkswagen Plaintiffs learned that a named defendant was the victim of identity fraud, with the counterfeiters using the defendant's previous address to conduct its illicit operations.

17. The uncontroverted evidence in those cases mirrors the facts of this case. Plaintiff has conducted a similar investigation into the identities of Defendants in this case but face significant challenges in service due to Defendants' collective actions to avoid discovery.

18. I reviewed dozens of cases similar to this one, a brief sample of the cases are included in Footnote 2 of the Memorandum of Law, and found that email service in cases similar to this one is common.

Date: December 6, 2018               /s/ Daniel S. Block
                                                                  Daniel S. Block

                                                                *Attorney for Plaintiff*